FILED

12/20/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 14, 2018 Session

## IN RE WILLARD R. SPARKS REVOCABLE TRUST 2004

**Appeal from the Probate Court for Shelby County**
**No. D-2608    Kathleen N. Gomes, Judge**

_____

### No. W2017-01497-COA-R3-CV

_____

This declaratory judgment action involves a multi-million dollar trust and a co-beneficiary and co-trustee's request for a detailed accounting and a liquidation plan. The case was dismissed, and the managing trustee filed a motion for Rule 11 sanctions. The trial court found multiple Rule 11 violations by the petitioner and awarded $200,000 in sanctions. Finding no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Sam B. Blair, Ryan A. Strain, Frank L Watson, III, and William F. Burns, Memphis, Tennessee, for the appellant, David M. Johnson.

Andrew C. Clarke, and Thomas Lang Wiseman, Memphis, Tennessee, for the appellee, Brian T. Sparks.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

The present case involves a trust established by Willard R. Sparks of Memphis, Tennessee, prior to his death in 2005.[1]  In 1977, Dr. Sparks founded an agricultural

_____

[1] Because this case was resolved on a Rule 12.02 motion to dismiss, the following facts concerning Dr. Willard Sparks and his various business ventures were derived from the pleadings and motions filed in the trial court and included in the record on appeal. These background facts concerning Dr. Sparks and his business ownership interests are provided for context and have no bearing on this Court's decision.

research, information, and consulting firm, and over decades, his business grew exponentially. He invested in other agribusinesses, and by the time of his death, he owned and/or held ownership interests in "dozens" of companies.

His sizable fortune consisted primarily of privately-held businesses, which could not be easily liquidated. Therefore, after he was diagnosed with terminal cancer in 2004, Dr. Sparks established the Willard R. Sparks Revocable Trust 2004 in order to receive and operate the majority of his holdings in those various agribusinesses. The trust was to be operated for the benefit of his three children, and upon the seventh anniversary of Dr. Sparks' death, the trust was to terminate, transferring his ownership interests to his children. According to the parties, the non-liquid trust assets have been valued at approximately $200 million.

In 2013, due to several multi-million-dollar claims against the trust, the trustees, with concurrence of the beneficiaries, executed an agreement to make a non-judicial modification to the trust. This Memorandum of Action ("MOA") appointed David M. Johnson as sole managing trustee, extended the trust "in good faith" until the claims against the trust could be resolved, and permitted liquidation of the trust's assets.

On June 25, 2015, Brian T. Sparks ("Petitioner"), a co-trustee and beneficiary of the trust, brought this action seeking declaratory and injunctive relief against Respondents Mr. Johnson (the managing trustee) and Robert D. Sparks (a co-trustee and beneficiary). Specifically, Petitioner sought a detailed accounting of the ongoing affairs of the trust and a plan for liquidation and distribution of the trust's assets. Therein, Petitioner claimed that he "ha[d] never received an accounting" and that although he had received "audited financial statements, . . . these reports do not rise to the level of detail required by the terms of the trust."

Mr. Johnson and Robert Sparks filed a motion to dismiss the claims and attached as exhibits typical monthly, quarterly, twelve-month cumulative, and audited financial statements that Petitioner presumably received each year. Petitioner later filed an amended petition, which added Petitioner's sister and co-beneficiary Sherry Sparks Wallace as a named respondent in addition to Mr. Johnson and Robert Sparks (collectively "Respondents"). In response, Respondents filed a motion to dismiss Petitioner's amended claims.

Prior to the hearing on the motion to dismiss, on December 4, 2015, Respondent Mr. Johnson filed a motion for sanctions under Tennessee Rule of Civil Procedure 11 against Petitioner on behalf of the trust pointing out several inaccuracies in the pleadings and specifically seeking recovery of attorneys' fees incurred by the trust in defending against the declaratory judgment action.[2]

---

[2] The record indicates that Mr. Johnson served Petitioner with the motion for sanctions on

By order entered February 29, 2016, the probate court dismissed the petition finding no justiciable controversy. The court explained as follows:

> After reviewing the pleadings of the case at hand, it is difficult to find the justiciable controversy. The Petition raises a lot of questions, but there are no allegations of wrongdoing. The allegations relate to requests for more detailed accountings, detailed attorney fees, and a detailed plan of liquidation. This Court is struck by the undisputed fact that monthly financial statements and yearly audited statements have been provided to all the Trustees and beneficiaries for the last ten (10) years. This Court is also struck by the fact that the Petitioner is a Co-Trustee and as such, has some role in the administration of the Trust, at least until the MOA . . . was executed naming David Johnson as managing Trustee. As a Trustee, Petitioner had access to all the information he requested.

The court then held a six-day hearing on the motion for Rule 11 sanctions on July 7 and August 8, 9, 10, 16, and 17, 2016, at which both Petitioner and his personal attorney testified and numerous exhibits, primarily financial statements, were produced.

In its order, entered February 28, 2017, the probate court found that Petitioner was untruthful in his pleadings and violated Rule 11. Because the court noted that there were a number of mistakes and inconsistencies in Petitioner's pleadings and "mounds of materials and exhibits," it chose to "highlight[ ] the most egregious errors," which gave the court "the most concern."

First, the court mentioned Petitioner's statement in his amended petition that he had requested detailed accounting information and that such information had been refused. The court explained that Respondents produced "mounds" of financial statements, which Petitioner admitted had been provided to him over the preceding decade. The court further stated:

> During the Sanctions hearing, this Court was convinced that reasonable accountings were provided to petitioner. . . .
>
> Willard Sparks had numerous business interests and companies. Sorting through all of the financial records would certainly be difficult, but [Petitioner] is a businessman and he had his own attorney to assist him.

The court also emphasized that, as a trustee, Petitioner had access to all of the information he requested.

---

November 12, 2015, pursuant to Tennessee Rule of Civil Procedure 11.03(1)(a).

Second, the court referred to Petitioner's averment that his brother and co-beneficiary, Robert Sparks, had twice improperly deposited trust funds into his personal account. Petitioner alleged that after he noticed and objected to the misuse of trust funds, he was told the funds would be repaid, but he never received evidence of repayment. The court, however, emphasized that the monthly financial statements clearly showed that the funds had been repaid, and Petitioner admitted at the hearing, after some encouragement by his attorney, that he did receive proof of repayment. According to the court, "It is clear . . . that [Petitioner] knew that these funds had been repaid long before he swore otherwise in his original and Amended Petition."

Third, the court pointed to an additional allegation of inappropriate use of trust funds in Petitioner's amended complaint, relating to a $1,050,000 loan made by Dr. Sparks' business. Petitioner claimed that the loan was an "inappropriate use of Trust funds for the benefit of Robert D. Sparks" and that he received no evidence of repayment. According to the court, however, ample evidence was presented showing that Petitioner knew of the loan and approved of it. Mr. Johnson provided a copy of a document, which Petitioner and his co-beneficiaries signed in 2007 approving the loan, and he also provided evidence that Petitioner had been forwarded an email in 2013 explaining the loan. Mr. Johnson also presented a 2013 document showing that the loan was paid off, which Petitioner received prior to the filing of the motion for sanctions. The trial court expressed concern that Petitioner repeated this particular allegation in his amended petition, which was filed four days after he was served with the motion for sanctions with the above-mentioned signed document from 2007 and the 2013 forwarded email attached thereto. Also of particular concern to the trial court was the fact that during the sanctions hearing Petitioner denied his signature on the 2007 document approving the loan. Although Petitioner conceded that he was "mistaken" about this claim in his response to Respondents' motion to dismiss, he failed to amend his pleading.

The trial court went on to explain:

[I]t appears to this Court that most of the information requested in the Declaratory Judgment action was obtained by the Petitioner prior to the filing of the original Declaratory Judgment Petition on June 25, 2015. Any question that was not answered prior to the Declaratory Judgment action was clearly answered in the Motion for Sanctions prior to the hearing on the Amended Petition. This Court cannot understand why the Petitioner, when shown actual proof of his misstatements in the Declaratory Judgment action, did not amend the Petition. Petitioner had sufficient time to correct his pleading before the hearing, but he failed to do so. . . .

. . . There is clear animosity between Brian Sparks and his brother Robert . . . . It appears that Brian Sparks' anger at his brother is what caused the

- 4 -

filing.

It also noted that "after the Sanctions hearing, this Court is even more convinced that the initial filing of the Declaratory Judgment [action] was unnecessary." **(@13)** The court, therefore, found that "Brian Sparks has violated Rule 11 of the Tennessee Rules of Civil Procedure[] and he is hereby sanctioned by this Court to pay all reasonable attorney fees and expenses caused by his willful and untruthful pleadings filed in this Court." **(@ 14)**

In a separate order, entered June 27, 2017, the probate court awarded $200,000 in sanctions despite Mr. Johnson's request for over $1.9 million in attorneys' fees incurred by the trust, Mr. Johnson, and Robert Sparks. The trial court expressed its displeasure with the considerable amount of fees expended in the case and declined to award the trust the full amount of its attorneys' fees. It explained:

> [T]he Court believes that a reasonable fee for sanctions to be paid by Brian Sparks to the Respondents is $200,000.00. While this figure is not based on a specific calculation of the Respondent's attorney fees or hours billed, the fee for sanction determined by this Court should serve as a sufficient deterrent to Brian Sparks. This Court finds that any fee in excess of $200,000.00 would be more severe than reasonably necessary to deter repetition of conduct by Brian Sparks and resolve this matter.

Thereafter, Mr. Johnson filed a motion for discretionary costs, on which the trial court reserved ruling until this Court's decision. Mr. Johnson filed a timely notice of appeal on the trust's behalf.

## II. ISSUES PRESENTED

On appeal, the parties raise a multitude of issues relating to the trial court's award of sanctions, but the majority of the issues boil down to one question: Whether the trial court abused its discretion in awarding Rule 11 sanctions and in the amount awarded. In addition, Petitioner asks this Court to consider whether the trial court abused its discretion in failing to deny the motion for discretionary costs.

## III. STANDARD OF REVIEW

On appeal, we review a trial court's decision to grant or deny a party's motion for sanctions pursuant to Rule 11 by the abuse of discretion standard. *Lindsey v. Lambert,* 333 S.W.3d 572, 578 (Tenn. Ct. App. 2010). Regarding the abuse of discretion standard of review, the Tennessee Supreme Court has explained:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the

decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. Thus, it does not permit reviewing courts to second-guess the court below or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

## IV. ANALYSIS

Mr. Johnson argues on appeal that the probate court, though it found Petitioner willfully and repeatedly violated Rule 11, awarded an inadequate sanction. According to him, the sanction "neither compensated Respondents for their losses nor carried sufficient bite to deter Petitioner and those like him in the future." For his part, Brian Sparks asserts that the probate court abused its discretion in awarding sanctions under Rule 11 because Respondents requested a "clearly excessive fee" and failed to produce proper evidence supporting their request.

Rule 11 of the Tennessee Rules of Civil Procedure governs the imposition of sanctions for pleadings and motions, and it provides in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

. . . .

(3) the allegations and other factual contentions have evidentiary support

or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Tenn. R. Civ. P. 11.02. "Generally stated, Rule 11 authorizes the trial court to impose sanctions if Rule 11.02 is violated, the moving party gives the required notice to the offending party, and the offending party fails to remedy any pending violation of Rule 11." *In re Zayne P.*, No. W2017-01590-COA-R3-PT, 2018 WL 2041573, at *9 (Tenn. Ct. App. Apr. 30, 2018). "If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court *may . . .* impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation." Tenn. R. Civ. P. 11.03 (emphasis added).

> Rule 11.03 outlines the proper measure of sanctions to be awarded by the court:
>
> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Tenn. R. Civ. P. 11.03(2). In addition, the rule provides that "[i]f warranted, the court *may* award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Tenn. R. Civ. P. 11.03(1) (emphasis added). We reiterate that both the decision to impose sanctions under Rule 11 and the decision concerning the particular measure of sanctions, including whether to award a party's attorney's fees in presenting the motion, are discretionary. The trial judge's decision on these issues is "entitled to great weight on appeal." *Stigall v. Lyle*, 119 S.W.3d 701, 706 (Tenn. Ct. App. 2003).

Our review of the record leads us to conclude that the trial court did not abuse its discretion in granting Mr. Johnson's motion for sanctions, nor did it abuse its discretion in the amount awarded. The court identified three separate instances of Petitioner's dishonesty and found that Petitioner filed the action for an improper purpose. The record wholly supports these findings, and Petitioner does not deny his sanctionable conduct. Although Petitioner makes much out of the "clearly excessive" request for sanctions, Rule 11 permits parties to seek sanctions in the form of attorney's fees, and Petitioner offers no existing law in support of his apparent argument that the trust is not entitled to an award of sanctions due to Mr. Johnson's request for fees.[3]

---

[3] We do acknowledge that Petitioner cites the Rules of Professional Conduct and relevant case

Regarding the amount of sanctions awarded, the trial court made the decision to award $200,000, and the court properly explained its basis for this figure. It was apparent from the order that the court accepted that $1.9 million in attorney's fees had been incurred by the trust; however, the court expressed displeasure with the amount expended stating that "[i]t was substantially larger than expected."[4] Although it did not specifically find that $1.9 million was an unreasonable fee, the court determined that such a figure was more severe than reasonably necessary for deterrence. Instead, the court deemed it appropriate to award a portion of those fees, $200,000, to serve as a deterrent, which was within the court's authority. Tenn. R. Civ. P. 11.03 (2) ("[T]he sanction may consist of . . . an order directing payment to the movant of *some or all* of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." (emphasis added)). Although Mr. Johnson adamantly argues that the trust is entitled to the full amount of its attorney's fees, including those incurred in presenting the Rule 11 motion for sanctions, the trial court, in its discretion, determined that such a generous award was unnecessary to deter repetition of the conduct especially considering, as the court did, "that [Petitioner] is a one-third beneficiary of the Trust and in effect[] has already paid one-third of the requested fee." After hearing six days' worth of evidence concerning the misconduct, the court determined that a sanction of $200,000 was appropriate, and we are not convinced that it applied an incorrect legal standard, nor was the decision illogical or unreasonable, nor was the decision based on a clearly erroneous assessment of the evidence.

We agree with the trial court's assessment that "Petitioner has some responsibility for his choice of litigation and attorneys. The same is true with the Respondents. The Respondents chose their attorneys and their litigation strategy." Litigants are not flies on the wall observing the litigation in which they are embroiled; they maintain some measure of control over the lengths to which their attorneys reach, and they must bear some responsibility for it as well. Indeed, Respondents in the case before us chose their litigation strategy, and we agree with the trial court that they cannot expect Petitioner to pay for it in its entirety. We, therefore, conclude that the trial court did not abuse its discretion in awarding $200,000 in Rule 11 sanctions.

Neither did the trial court abuse its discretion in declining to award attorney's fees

---

law supporting the proposition that an attorney who seeks a clearly excessive fee *from his or her own client* is not entitled to collect a fee at all. *See* RPC 1.5(a); *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996). However, the situation presented here is certainly distinguishable.

[4] Mr. Johnson expresses concern in his brief on appeal that the trial court appears to have misstated the number of hours that the trust's attorneys spent working on the case. According to Mr. Johnson, the trial court overstated the number of hours spent. However, it is unclear to us how Mr. Johnson believes this impacted the trial court's decision, as the court clearly stated in its order that "this figure is not based on a specific calculation of the Respondent's attorney fees or hours billed."

pursuant to Tennessee Code Annotated § 35-15-1004. Section 35-15-1004(a) provides as follows:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, *may* award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

(emphasis added). In his reply to Petitioner's Response in Opposition to Motion for Sanctions, Mr. Johnson cited section 35-15-1004(a) as an additional basis for recovery of attorney's fees. The trial court, in its February 2017 order, declined to make such an award and imposed sanctions under Rule 11 instead. On appeal, Mr. Johnson has alternatively argued that the trial court abused its discretion in denying an award of attorney's fees under the statute. However, an award under section 35-15-1004(a)—not unlike a Rule 11 sanction—is a decision that lies within the trial court's discretion. *Goza v. SunTrust Bank*, No. W2014-00635-COA-R3-CV, 2015 WL 4481267, at *6 (Tenn. Ct. App. July 22, 2015). We cannot say that the trial court abused its discretion in declining to award attorney's fees pursuant to this statute in light of its existing award under Rule 11.

Finally, we address Petitioner's argument that the trial court abused its discretion in failing to deny the motion for discretionary costs. It is apparent from Petitioner's brief on appeal that he is seeking a decision from this Court that certain expenses submitted by Mr. Johnson are not recoverable as discretionary costs. However, because the trial court never entered an order on this matter, the issue is not properly before us. Still, as we have recently explained:

> It is important to note, however, that the absence of an order on [a] motion for discretionary costs does not defeat our exercise of jurisdiction over this appeal. A final order does exist. *See Payne v. Tipton Cnty.*, 448 S.W.3d 891, 898 n.4 (Tenn. Ct. App. 2014) (citation omitted) (noting that a motion for discretionary costs filed after a final order does not arrest the finality of the trial court's judgment); *Roberts v. Roberts*, No. E2009-02350-COA-R3-CV, 2010 WL 4865441, at *8 (Tenn. Ct. App. Nov. 29, 2010) ("The retention of the issue of discretionary costs does not prevent the . . . judgment from being final for purposes of appeal.").

*Phelps v. Benke*, No. M2015-02212-COA-R3-CV, 2017 WL 113965 at *10 (Tenn. Ct. App. Jan. 11, 2017).

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the probate court and

remand for further proceedings consistent with this opinion.  Costs of this appeal are taxed equally to the appellant, Willard R. Sparks Revocable Trust 2004, and to the appellee, Brian T. Sparks, for which execution may issue if necessary.

_____

BRANDON O. GIBSON, JUDGE